FILED
2012 May-07  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL CASS,** | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| **v.** | ) | **1:07-cr-00035-LSC-JEO** |
| | ) | **1:11-cv-08006-LSC-JEO** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION

The cases referenced above are before the court on the *pro se* motion of defendant Paul Cass, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (Doc. 1).[1]  He attacks his convictions with the following claims: (1) his attorney rendered ineffective assistance of counsel during the trial; and (2) the Government knowingly presented false testimony during the trial.  Upon careful consideration, the court finds no need for an evidentiary hearing and that the motion is due to be denied.

### I.  FACTS AND PROCEDURAL HISTORY

On January 31, 2007, the Grand Jury issued a 30-count indictment charging Cass with 13 counts of drug-related offenses.  (07-35, Doc. 1).  Count 1 charged Cass and others with Conspiracy to Distribute and Possess with Intent to Distribute 50 grams or more of a Mixture and Substance containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  (*Id*. at 2-3).  Counts 9, 11-17, 20, 21, and 23 charged Cass with Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and

---

[1]References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.  References to "07-35 Doc. ___" are to the document numbers assigned by the Clerk of the Court in the defendant's original criminal case (*United States v. Cass*, 1:07-cr-00035-LSC-JEO-1).

841(b)(1)(C).  (*Id*. at 7-15).  Count 29 charged Cass and others with Maintaining a Crack House, in violation of 21 U.S.C. § 856(a)(1).  (*Id*. at 18).

The case proceeded to trial, and the jury convicted Cass of all 13 counts on May 11, 2007. (07-35, Docs. 108, 184-96).  At the sentencing hearing, this court sentenced Cass to life imprisonment on Count 1, 360 months on Counts 9, 11-17, 20, 21, 23, and 240 months on Count 29.  (07-35, Doc. 271).

Cass filed a direct appeal on October 25, 2007.  (07-35, docket entry of 10/29/2007).  The Government filed a responsive brief, and, on July 16, 2009, the Eleventh Circuit affirmed Cass's conviction and sentence in an unpublished opinion.  *See United States v. Cass*, 331 Fed. App'x 684 (11th Cir. 2009).  On January 8, 2010, Cass petitioned the United States Supreme Court for a writ of *certiorari*, which that court denied on March 17, 2010.

On February 28, 2011, Cass timely filed the instant petition pursuant to 28 U.S.C. § 2255. (Doc. 1).  On March 7, 2011, this court ordered the Government to respond to the petition.  (Doc. 3).  The Government responded with a memorandum supported by several attachments, including an affidavit of Cass's trial counsel, Milton J. Westry ("Westry").  (Doc. 4).  Cass replied to the Government's response on May 19, 2011.  (Doc. 7).  Because Cass is proceeding *pro se*, his pleadings are entitled to liberal construction.  *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).

## II.  STANDARD OF REVIEW

A prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  If a court finds a claim under § 2255

to be valid, then the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255. The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### III.  DISCUSSION

### A.  Defendant's Claims

Cass asserts two constitutional claims for relief:

1.  **Ineffective Assistance of Counsel Claim -** That Westry rendered ineffective assistance in violation of the Sixth Amendment due to his alleged:

    A.  Failure to move to suppress an allegedly illegally obtained wire tap (doc. 1 at 5);

    B.  Failure to properly investigate the racial composition of the venire from which the petit jury was selected (*id.* at 11);

> C.      Failure to keep Cass's prior convictions out of evidence at trial (*id*. at 15);
>
> D.      Failure to request a mistrial for the Government's alleged violation of the Jencks Act (*id*. at 19); and,
>
> E.      Failure to conduct a through investigation of government witnesses (*id*. at 21).

2.      **Perjured Testimony -** That the Government knowingly presented false evidence to the jury in violation of the Fifth and Sixth Amendment (*id*. at 24).

Each claim will be addressed separately below.

## B.  Ineffective Assistance of Counsel

### 1.  Legal Standard

In order to prevail on a claim of ineffective assistance of counsel, the movant must establish:  (1) deficient performance—that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice—but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). The burden of proving ineffective assistance remains with the movant at all times.  *Chandler*, 218 F.3d at 1315 n.15.  A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  *Strickland*, 466 U.S. at 697; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

Review of counsel's conduct is highly deferential*.  Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).  Second-guessing an attorney's strategic defense is not permitted; rather, courts should presume effectiveness and avoid second-guessing with the benefit of hindsight. *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).  Because a wide range of performance

is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but, "are interested in whether the adversarial process at trial ... worked adequately." *Id.* at 386. To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers*, 13 F.3d at 386.

## 2. Application

With the above law as a backdrop, the court will now consider Cass's grounds for ineffective assistance of counsel. When deciding a § 2255 petition without an evidentiary hearing, the court accepts the allegations in the petition as true. *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002). However, those allegations must be "reasonably specific" to merit deference. *Id*.

### i.  Failure to Move to Suppress Electronic Surveillance Evidence

Cass's first claim is that Westry rendered ineffective assistance by failing to move to suppress "illegal electronic surveillance evidence obtained at [Cass's] residence by law enforcement officials without first submitting probable cause affidavits to a judge of competent jurisdiction, and without obtaining a warrant authorizing the interception of wire, oral, or electronic communications." (Doc. 1 at 5). The Government responds that this claim is misguided because Cass has mislabeled the evidence as requiring a warrant for interception. (Doc. 4 at 5). Specifically, the Government asserts that the evidence presented was not generated

from wire taps, but, rather "one-party" audio and video recordings of drug transactions between

Cass and *various confidential informants*. (*Id*.)  This assertion is supported by Westry's

testimony that "[n]one of the [video and audio drug] transactions were obtained through wire

taps or video surveillance equipment placed inside of Mr. Cass'[s] home or business" and that

each record was "obtained from audio and video equipment worn by the government's

confidential informant during the course of purchasing narcotics from Mr. Cass, or his co-

defendants."  (Doc. 4-1 at 1-2).

The Government correctly contends that a "defendant has no justifiable expectation of

privacy when he speaks with someone acting as a government informant, and is unaware that a

recording device is concealed in the room."  *United States v. Laetividial-Gonzalez*, 939 F.2d

1455 (11th Cir. 1991), *overruled on other grounds United States v. Giltner,* 972 F.2d 1563 (11th

Cir. 1992).  Thus, all that is required to record a conversation with no expectation of privacy is

the consent of one of the parties.  *See United States v. White*, 401 U.S. 745, 751-53 (1971).  "No

warrant is needed when a government informant consents to the recording of a conversation in

which he participates."  *United States v. Smith*, 918 F.2d 1551, 1558 (11th Cir. 1990).  Because

the government had the consent of the informants on the recordings presented at trial, Cass's

arguments that Westry should have moved to suppress the evidence are without merit.

Therefore, Westry cannot be found to have been ineffective in failing to attempt to exclude the

electronic surveillance evidence.  Cass's claim must fail.

### ii.  Failure to Investigate Racial Composition of Venire

Cass's second claim is that Westry rendered ineffective assistance by failing to

investigate the racial composition of the venire from which the petit jury was selected.

Specifically, Cass contends that Westry "receiv[ed] credible information that the district court's

juror system for electronically subpoenaing grand and petit jurors was race partial," and that

"after said system produced [no] black jurors for these black defendants to select a jury," Westry

improperly failed to investigate the matter, move to dismiss the indictment, or move the court for

a new trial selection of petit jurors.  (Doc. 1 at 11).  This argument is based on Cass's Sixth

Amendment right to a jury venire, from which the petit jury is drawn, that represented a fair

cross-section of the community.  *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).

The Government responds that the claim must fail because Cass fails to assert specific

allegations that this court's venire process systematically excludes black jurors.  (Doc. 4 at 7)

(citing *Holmes v. United States*, No. 01-453, 2005 WL 1606594, *3 (E.D. Tenn. 2005)).  Further,

the Government notes that Westry testified that he "received no such information" about the

selection of petit jury.  (Doc. 4-1 at 2).  Westry also added that "[he] would have no way of

knowing (prior to trial) which citizens were subpoenaed for jury duty by the United District

Clerks office."  (*Id.*)

The Supreme Court has emphasized that "in holding that petit juries must be drawn from

a source fairly representative of the community we impose no requirement that petit juries

actually chosen must mirror the community and reflect the various distinctive groups in the

population." *Taylor*, 419 U.S. at 538.  Instead, "[d]efendants are not entitled to a jury of any

particular composition, but the jury wheels, pools of names, panels, or venires from which juries

are drawn must not systematically exclude distinctive groups in the community and thereby fail

to be reasonably representative thereof." *Id*.  Here, Cass has failed to provide the court with any

reasonably specific documentation or specific facts indicating that the venire process of this court

systematically excludes distinctive groups in the community.  Therefore, Westry cannot be found

to have been ineffective in failing to investigate the process, move to dismiss the indictment, or

move for a new selection of jurors.  Cass's claim must fail.

### iii.  Failure to Prevent Introduction of Prior Convictions

Cass's third claim is that Westry rendered ineffective assistance by "allow[ing] the

district court to sustain the government's request to introduce Mr. Cass'[s] prior convictions at

trial without requiring the district court to fully and properly consider the extent to which the

defendant's unlawful intent was established by other evidence introduced at trial."  (Doc. 1 at

15).  The Government responds that Westry objected to the admission of the prior conviction at

trial and that this court exercised sound discretion in allowing the prior convictions.  (Doc. 4 at

7).  Indeed, on direct appeal, Cass argued that this court abused its discretion in allowing

evidence of his prior convictions, and the Eleventh Circuit affirmed the trial court's decision.

*Cass*, 331 Fed. App'x at 686.  The Eleventh Circuit held:

> We conclude from the record that the district court did not abuse its discretion by
> denying Cass's motion *in limine* and admitting evidence of his prior convictions
> because it was relevant to show his criminal intent under § 841(a)(1), and its
> probative value was not substantially outweighed by the risk of unfair prejudice.

*Id*.

In reply, Cass asserts that his specific claim is that Westry "failed to inform himself of

applicable legal authority."  (Doc. 7 at 17).  However, this argument is not persuasive because the

Eleventh Circuit expressly held that evidence of Cass's prior convictions was "relevant to show

his criminal intent under § 841(a)(1)."  *Cass*, 331 Fed. App'x at 686.  In view of the Eleventh

Circuit's decision on the merits concerning admission of the evidence, Cass cannot show

prejudice resulting from Westry's alleged deficient performance in failing to prevent introduction

of Cass's prior convictions.  *See also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir.

2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be

re-litigated in a collateral attack under section 2255."). Stated another way, Cass has not

demonstrated that a different result would have been reached if Westry had "inform[ed] himself

of applicable legal authority." (Doc. 7 at 17). As such, Cass's claim must fail.

### vi. Failure to Move for a Mistrial

Cass's fourth claim is that Westry rendered ineffective assistance by failing to move for a

mistrial after "discovering the government withheld Jencks Act material." (Doc. 1 at 19). The

Jencks Act provides that, on a defendant's motion, a district court shall "order the United States

to produce any statement ... of the witness in the possession of the United States which relates to

the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Cass's claim

relates to the testimony of government witness James Cunningham. After Westry elicited

testimony from Cunningham on cross-examination about statements Cunningham provided the

police, Westry approached the bench and requested the statements. In response, the Government

took the position that the defense counsel had not specifically requested the statements at the

close of Cunningham's direct examination. This court ordered the Government to provide

defense counsel with the statements and then recessed the trial to allow Westry to review the

statements.

The Government now responds to Cass's claim by asserting that it did not violate the

Jencks Act because Westry did not "explicitly request" Cunningham's statements at the close of

direct examination. (Doc. 4 at 8). And, even assuming a violation of the Jencks Act occurred,

the Government contends that the violation was remedied by its subsequent production of the

statements. The Government notes that Westry has testified that "I concluded that there was no

grounds for a motion for mistrial since [the statements] contained no exculpatory evidence or

testimony. In fact, there was no testimony that deviated from the original statements of the

witnesses, which I had received in the initial production of discovery by the government." (Doc.

4-1 at 2).  In view of Westry's testimony, the Government argues that his decision not to request

a mistrial was reasonable within the context of *Strickland*.  The Government also notes that

mistrial is an extreme remedy for a Jencks violation.

      In reply, Cass asserts that he has "never seen" the disclosed statements and, therefore, that

a fact issue exists regarding whether he ever saw the disclosed statements and agreed to proceed

without moving for a mistrial.[2]  (Doc. 7 at 19-20).  Cass also adds that Westry's affidavit omits

discussion of whether the disclosed statements contained impeachment evidence.  (*Id*.)

However, Westry's affidavit does include testimony that the disclosed statements lacked any

"testimony that deviated from the original statements of the witnesses."  Thus, the logical

conclusion is that the disclosed statements lacked any impeachment evidence that could have

aided Cass's defense.

      In the final analysis, this court agrees with the Government that Cass cannot establish he

suffered any prejudice from an alleged violation of the Jencks Act.  Westry received the subject

statements during Cunningham's cross-examination, the court recessed to allow Westry time to

review the statements, and Westry testified that the statement contained no exculpatory evidence

or testimony.   Because Cass cannot establish any prejudice from the alleged violation of the

Jencks Act, the claim fails under *Strickland*.

### v.  Failure to Investigate Government Witnesses

      Cass's fifth and final claim of ineffective assistance of counsel is that Westry failed to

investigate the statements and actions of the Government witnesses and denied Cass

---

[2]In reply, Cass refers to the statements of Dickerson. (Doc. 7 at 19).  The court assumes that this is a typographical error because the petition refers only to the statements made to police by Cunningham. (Doc. 1 at 20).  The citations in the petition reference only the testimony of Cunningham.

"compulsory process for obtaining witnesses in his favor." (Doc. 1 at 21). In support, Cass

submits an affidavit dated September 3, 2008, of Government witness Waylon Dickerson.[3] In

the new affidavit, Dickerson testifies as follows:

> My confession to the case was a lie because of the pressure [Drug Task Force
> Agent] Patrick Thorton and fellow officers put on me and I didn't want to go back
> to prison. I hadn't been to Mr. Paul Cass house since 1994 and the thing he was
> allegedly doing I had no knowledge of.... The information that I gave on the
> conviction in which Paul Cass is currently serving was erroneous and bogus due
> to coercion and threats.

(Doc. 1 at 50-51).

The Government responds to Dickerson's affidavit by arguing that Westry could not have

known about Dickerson's alleged perjury during the trial because he renounced his testimony

only *after* the trial. (Doc. 4 at 10-11). Further, the Government contends that Westry reasonably

relied on Dickerson's plea agreement and oath to truthfully testify during the trial. Thus, the

Government contends that Dickerson's apparent renunciation on September 3, 2008, cannot be

impugned to Westry today and that no violation of the Sixth Amendment occurred.

Significantly, "[i]n any ineffectiveness case, a particular decision not to investigate must

be directly assessed for reasonableness in all the circumstances, applying a heavy measure of

deference to counsel's judgments." *Strickland*, 466 U.S. at 691. In other words, the duty to

investigate "does not ... compel defense counsel to investigate comprehensively every lead or

possible defense ... or to scour the globe on the off-chance something will turn up." *Rompilla v.*

*Beard*, 545 U.S. 374, 383, (2005). The relevant inquiry is not whether Westry pursued a

particular defense or witness. Rather, Cass must show that not one reasonably competent

attorney would act as did his counsel. *See Chandler*, 218 F.3d at 1318 ("Counsel's reliance on

---

[3]Dickerson testified during the trial that he purchased crack cocaine from Cass.

11

particular lines of defense to the exclusion of others—whether or not he investigated those other

defenses– is a matter of strategy and is not ineffective unless the petitioner can prove the chosen

course, in itself, was unreasonable.").

Here, Cass has not established that the course taken by his counsel was objectively

unreasonable because he has failed to demonstrate any reason Westry should have further

investigated Dickerson or any other witnesses.  Further, the Government produced significant

evidence indicating Cass's guilt independent of Dickerson's testimony, including electronic

recordings of drug buys.  In sum, Cass has failed show that a reasonable lawyer in Westry's

circumstances had reason to further investigate Dickerson, or any other witnesses, and the

accuracy of his statements.  *See Rogers*, 13 F.3d at 386.

### B.  Perjured Testimony

Cass also contends that the Government denied him a fair trial, in violation of his Fifth

and Sixth Amendment rights, by presenting "known false testimony to the jury, that result in

[his] convictions."  (Doc. 1 at 24).  Stated another way, in view of Dickerson's affidavit, Cass

argues that the government knowingly presented false testimony from Dickerson and that this

testimony resulted in his convictions.  (*Id*. at 25).  This argument is based on the well-established

rule that "a conviction obtained by the knowing use of perjured testimony is fundamentally

unfair, and must be set aside if there is any reasonable likelihood that the false testimony could

have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976).

The Government responds by contending that Cass has failed to submit any evidence that

it *knowingly* presented false testimony.  (Doc. 4 at 11).  The Government also contends that, even

assuming the trial included perjured testimony, the verdict was consistent with "voluminous

testimony and physical evidence to prove [Cass's] guilt," including video and audio evidence

demonstrating drug transactions involving Cass. (*Id*. at 12). Additionally, the Government notes that several co-conspirators testified against Cass.

The court agrees that, even without Dickerson's testimony, the Government produced overwhelming evidence of Cass's guilt. Even in the light most favorable to Cass, it cannot be said that it is more probable than not that Cass would be acquitted on retrial absent the testimony of Dickerson. Therefore, Cass is not entitled to any relief on this claim.

### IV.  CONCLUSION

For the foregoing reasons, Cass's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is due to be denied.[4]  An appropriate order will be entered.

Done this 7th day of May 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458

---

[4] Also before the court is Cass's "Motion for Production of Documents and Things and Entry Upon the Land for Inspection and Other Purposes Pursuant to Rule (34)" (07-35, doc. 343) and Cass's Motion for Discovery (doc. 9). Upon consideration, the court finds that both motions are due to be denied.